UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TERRY W. MOWATT,

        Petitioner,

v.

HAROLD CLARKE,

        Respondent.

CASE NO. C06-1590-JLR-JPD

REPORT AND RECOMMENDATION

## INTRODUCTION

In 2000, petitioner Terry Mowatt pled guilty in King County Superior Court to first-degree murder. He was sentenced to 310 months in prison. Through counsel, petitioner has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner's primary claim is that he received ineffective assistance of counsel during his plea negotiations with the prosecutor. Having reviewed the parties' submissions, the Court concludes that petitioner is not entitled to habeas relief and the petition should be denied.

## BACKGROUND

On appeal, the Washington Court of Appeals summarized the facts of petitioner's case as follows:

> Late one afternoon, John Ward was unlocking the door of his parked car when the driver of another vehicle pulled alongside and shot him four times at close range. Ward died as a result of the multiple gunshot wounds. Before dying, Ward told several individuals that Mowatt shot him. Ward and Mowatt had an ongoing dispute over the possession of a backpack which allegedly contained money and illegal drugs.
>
> One day after the shooting, Mowatt met with attorney David Gehrke. Mowatt

REPORT & RECOMMENDATION
PAGE 1

explained to Gehrke that he was rumored to be a suspect in the Ward shooting. At Gehrke's suggestion, Mowatt turned himself in to police.

Following his arrest, Mowatt retained Gehrke as counsel in the case. Mowatt was charged with one count of first degree murder while armed with a firearm and one count of drive-by shooting. Over the next few months, Gehrke met with Mowatt on a number of different occasions and discussed the case. During pretrial preparations, Mowatt provided information about an alibi witness named Lamont Nelson X. That person was the only one who, if believed, could account for Mowatt's whereabouts at the time of the shooting. As the scheduled trial date approached, Gehrke informed Mowatt that this key witness would not testify and eventually recommended that Mowatt accept a plea offered by the State.

Mowatt pleaded guilty to one count of first degree murder with a firearm enhancement on August 28, 2000. A judge pro tempore, Kenneth Comstock, presided over the plea hearing. At the hearing, Mowatt indicated that he wanted to plead guilty. When asked if he and Gehrke reviewed the entire plea form together, Mowatt replied "[y]es." Mowatt also stated that Gehrke answered all the questions he had about the plea form. Judge Comstock thereafter accepted Mowatt's plea of guilty, finding that he made the plea voluntarily and intelligently. At sentencing, a superior court judge imposed a standard range sentence of 310 months.

Almost a year later, Mowatt filed a motion to withdraw his guilty plea. An evidentiary hearing was held in October 2002. Conflicting testimony was presented at the hearing regarding the nature and extent of Gehrke's representation of Mowatt. After considering the evidence presented, the superior court denied Mowatt's motion. In so doing, the court entered findings of fact and conclusions of law. This appeal followed.

(Dkt. No. 17, Ex. 12 at 1-3).

The Washington Court of Appeals affirmed the trial court's denial of petitioner's motion to withdraw his guilty plea. (Dkt. No. 17, Ex. 12). Petitioner filed a petition for review in the Washington Supreme Court, which that court denied. (*Id.*, Ex. 18). Petitioner then filed a personal restraint petition ("PRP") in the Washington Supreme Court. (*Id.*, Ex. 20). The court dismissed the PRP. (*Id.*, Ex. 25).

Through counsel, petitioner filed the instant petition for a writ of habeas corpus on November 2, 2006. (Dkt. No. 1). Respondent filed his answer on January 22, 2007. (Dkt. No. 15). Petitioner's counsel then withdrew and the Federal Public Defender was appointed to represent petitioner. (Dkt. No. 24). Newly-appointed counsel for petitioner filed a supplemental response to the answer, to which respondent filed a reply. (Dkt. Nos. 28, 31). Finally, petitioner filed a surreply (Dkt. No. 33) and the matter is now ready for review.

## GROUNDS FOR RELIEF

Petitioner's habeas petition sets forth the following three grounds for relief:

REPORT & RECOMMENDATION
PAGE 2

      1. Mr. Mowatt pled guilty before a pro tem judge. This pro tem judge did not have the authority to accept the guilty plea, thereby violating Mr. Mowatt's right to due process under the 14th Amendment.

      2. Mr. Mowatt was denied effective assistance of counsel by his first and second attorneys, David Gehrke and James White, in both the trial and appellate courts, in violation of the right to counsel under U.S. Const. Amend. 6 and the right to due process under U.S. Const. Amend. 14.

      3. Mr. Mowatt's plea of guilty was not knowing and voluntary and the result of ineffective assistance of counsel in violation of U.S. Const. Amend. 6 & 14 (right to counsel and due process clauses).

(Dkt. No. 1 at 6, 8, 9).

## DISCUSSION

A.   Standard of Review under Habeas Statute

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs because petitioner filed his habeas petition after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Barajas v. Wise*, 481 F.3d 734, 738 (9th Cir. 2007). Under AEDPA, petitioner may obtain relief only in one of two circumstances: First, he may obtain relief if the state court's denial of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "Clearly established Federal law" refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions. *See Carey v. Musladin*, __ U.S. __, 127 S. Ct. 649, 653 (2006). A state-court decision is "contrary to" clearly established Supreme Court precedent if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state-court decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407.

Second, petitioner may obtain relief if the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Federal courts must presume the correctness of the state court's factual findings, but petitioner may rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Finally, a federal court sitting in habeas jurisdiction must be convinced that the state court's decision is "more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The state court's decision must be "objectively

REPORT & RECOMMENDATION
PAGE 3

unreasonable." *Id.*

### B. Petitioner's Grounds for Relief

#### 1. Guilty Plea Accepted by Pro Tem Judge

Petitioner first argues that the pro tem judge who accepted his guilty plea did not have authority to do so and thereby violated petitioner's federal right to due process. Specifically, petitioner contends that "there is simply no authority for an unelected judge to preside over a guilty plea." (Dkt. No. 28 at 25). Petitioner concedes that Washington law permits pro tem judges to try cases, but argues that this authority does not include the power to preside over a guilty plea. (*Id.*) Petitioner also argues that even if such power does exist, before a pro tem judge may exercise it, he or she must be appointed by an elected judge. Here, an elected judge's signature was apparently "pre-printed" on the form appointing the pro tem judge. However, petitioner maintains that this signature was insufficient to constitute "appointment." (*Id.* at 25-26).

Respondent responds that the question of whether pro tem judges in Washington State are empowered to preside over guilty pleas is purely a question of state law that lies outside the scope of federal habeas review. (Dkt. No. 31 at 14-15). In addition, respondent argues that even if the question were properly before this Court, the record indicates that petitioner and his attorney both agreed to having the guilty plea accepted by a pro tem judge, and thereby fully complied with Washington's sole requirement for the appointment of pro tem judges.

The Court does not agree with respondent's contention that this issue is solely a matter of state law. In reviewing a district court's denial of a habeas petition, the Ninth Circuit Court of Appeals stated that "the right to be tried by a person with jurisdiction is a critical element of the federal constitutional right to a fair trial . . . ." *Horton v. Mayle*, 408 F.3d 570, 577 (9th Cir. 2004). However, here, as in *Horton*, that right appears to have been honored. Petitioner's reading of Washington law as limiting a pro tem judge's authority and also requiring a "live" appointment by an elected judge lacks any legal support. In addition, the state court found that petitioner and his attorney both agreed to the pro tem judge hearing his guilty plea, and this finding is entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). Accordingly, petitioner's first ground for relief should be denied.

REPORT & RECOMMENDATION
PAGE 4

2. <u>Ineffective Assistance of Counsel</u>

   a. <u>Standard for Ineffective Assistance Claims</u>

Claims of ineffectiveness of counsel are reviewed according to the standard announced in *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984). In order to prevail, petitioner must establish two elements: First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under "prevailing professional norms." *Strickland*, 466 U.S. at 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the context of a guilty plea, the test is whether "there is a reasonable probability that, but for counsel's errors, [defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Regarding the first prong of the *Strickland* test, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* In addition, the Supreme Court has stated that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. "The object of an ineffective assistance claim is not to grade counsel's performance. If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

   b. <u>Application of Standard to Petitioner's Claim</u>

Petitioner claims that his trial counsel was ineffective in two respects, both involving the prosecutor's threat to seek an exceptional sentence if petitioner rejected the plea offer and insisted on going to trial. Specifically, petitioner contends that counsel misunderstood, and therefore misadvised petitioner, regarding the factual basis of the prosecutor's threat to seek an exceptional sentence, and that counsel also failed to advise petitioner regarding the questionable validity of exceptional sentences in the wake of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The failure to advise him of *Apprendi*,

petitioner claims, rendered his guilty plea invalid because it was not knowing and voluntary. This claim is addressed by the Court in petitioner's third ground for relief below.[1]

Regarding the factual basis for seeking an exceptional sentence, the prosecutor wrote to petitioner and his counsel as follows during plea negotiations:

> We have been more than generous with our offer to drop the drive by shooting charge, and to allow a plea to low end recommendation of 310 months (250 months plus 60 months for firearm enhancement), or roughly 25 years. I will reiterate that offer for the last time. The victim's mother is flying in to Seattle for the trial, and we would like to spare her, and the rest of Mr. Ward's family, the ordeal of a trial which replays the cold-blooded murder of her son.
>
> If you and your client insist on proceeding to trial, the State will recommend an exceptional sentence of 45 years confinement. I believe that we have a legal basis (and I have caselaw which supports this) to argue for *an exceptional sentence based on deliberate cruelty (numerous shots) and the fact that John Ward was particularly vulnerable by being pinned against his car and shot in the back four times*. I should advise you that last year I successfully obtained an exceptional sentence in a first degree murder case, after a trial, based on similar grounds . . . .

(Dkt. No. 17, Ex. 6 at 49) (emphasis added).

Thus, as expressed in this letter, the basis of the prosecutor's threat to seek an exceptional sentence was that the victim was vulnerable and was shot four times in the back. Counsel, however, advised petitioner that the basis for an exceptional sentence was the downward angle of the shots as they entered the victim's body. As counsel stated in a declaration he filed during proceedings on petitioner's motion to withdraw his guilty plea: "[W]e talked about the downward angle or the slumping as part of the viciousness or cruelty aspect, for an exceptional sentence, akin to kicking a person while they're down, here shooting a person as they are going down." (Dkt. No. 17, Ex. 6 at 59).

Petitioner initially argued here that the "downward trajectory" theory explained to him by counsel was obviously flawed and these flaws should have been detected by counsel. (Dk. No. 28 at 13-14). However, after respondent filed a brief clarifying that the prosecutor's basis for seeking an exceptional sentence was not "downward trajectory" but instead was based upon the vulnerability of the victim and the number of shots (Dkt. No. 31 at 2), petitioner then changed the focus of his argument. He now maintains that counsel was

---

[1] Petitioner's habeas petition listed an additional claim that his appellate counsel was also ineffective. (Dkt. No. 1 at 8). Respondent asserted in his answer that such a claim was not cognizable on habeas review. (Dkt. No. 15 at 14-15). Petitioner then apparently abandoned this claim in subsequent pleadings. (Dkt. No. 28 at 17, n.11). Consequently, the Court need not address it.

REPORT & RECOMMENDATION
PAGE 6

ineffective because he "advised his client to plead guilty based upon a theory [downward trajectory of shots] that not even the State believed afforded a legitimate basis for an exceptional sentence." (Dkt. No. 33 at 2).

Applying the "highly deferential" standard of *Strickland* to the present case, the Court concludes that trial counsel's misapprehension of the precise basis of the prosecutor's argument for an exceptional sentence was not so serious an error as to fall outside the wide range of reasonable professional assistance guaranteed by the Sixth Amendment. Clearly, counsel was aware that the circumstances of the shooting had some troubling aspects and he advised petitioner that the prosecutor would use the circumstances of the shooting to argue that the offense warranted an exceptional sentence. Counsel may have been mistaken as to which precise circumstances the prosecutor would rely upon, but at least he alerted petitioner to the potential danger of an exceptional sentence based upon the shooting. Counsel's misunderstanding does not rise to the level of deficient performance under *Strickland*.[2]

In addition, petitioner fails to satisfy the "prejudice" prong of *Strickland* as well. Had counsel correctly perceived the precise basis of the prosecutor's exceptional sentence argument, it seems unlikely that petitioner would have decided to plead not guilty and would have insisted on going to trial. Petitioner has not presented to the Court any argument or evidence that would undermine the strength of the prosecutor's case against him. The prosecutor's case included the testimony of several eyewitnesses, including the victim, that petitioner shot the victim four times in the back. (Dkt. No. 17, Ex. 4 at 161-62). Petitioner had no witnesses who could provide an alibi and essentially had no defense. (*Id*., Ex. 6 at 59-61). In view of these circumstances, it is unlikely that petitioner would have rejected the prosecutor's offer of a sentence on the low end of the standard range, and risk going to trial and receiving a higher sentence. Therefore, petitioner

---

[2] Petitioner argues that absent the downward trajectory theory, the prosecutor lacked *any* basis on which to seek an exceptional sentence. (Dkt. No. 33 at 3). This argument is based upon petitioner's interpretation of Washington law, which is apparently at odds with the prosecutor's interpretation, as expressed in his letter to petitioner and in his oral argument during the state court proceedings. (Dkt. No. 31 at 5, n.1). However, the Court need not resolve this conflict in interpretations because it is not necessary to determine the precise contours of Washington sentencing law in order to assess counsel's performance under *Strickland*. Regardless of whether it was supported by a *winning* argument, the prosecutor's threat to seek an exceptional sentence had to be taken seriously by counsel, and although it may not have ultimately carried the day in state court, petitioner's counsel would have been remiss had he not discussed it with his client. Accordingly, under the highly deferential standard of *Strickland*, counsel's caution in the face of the prosecutor's threat – even if that threat proved ultimately to be unfounded – discharged his duty under the Sixth Amendment.

REPORT & RECOMMENDATION
PAGE 7

has not shown "prejudice" under *Strickland* and his claim of ineffective assistance should be denied.[3]

### 3. Counsel's Lack of Advice Regarding *Apprendi*

Petitioner's final ground for relief is that his guilty plea was not made knowingly, voluntarily and intelligently because his trial counsel failed to tell him about the effect that the Supreme Court decision in *Apprendi* might have on any potential exceptional sentence. *Apprendi* was decided approximately two months before petitioner pled guilty. Petitioner and respondent both argue at length about how much weight a reasonable defense attorney should have given *Apprendi*'s effect on Washington's sentencing law during these two months. Petitioner argued initially here that counsel should have explained to him that *Apprendi* "rendered the Washington exceptional sentencing scheme unconstitutional, or at minimum, created an urgent and real question about the constitutionality of Washington's system." (Dkt. No. 28 at 18). Respondent countered that at the time petitioner entered his guilty plea, and for several years after, "courts across the country held that *Apprendi* did not apply to sentences that, like Mr. Mowatt's, were below the traditional 'statutory maximum' as that term was then defined." (Dkt. No. 31 at 9). Respondent further points out that when Washington's system was invalidated four years later by the Supreme Court in *Blakely v. Washington*, 542 U.S. 296 (2004), that result had not been predicted by the vast majority of lower courts. (*Id.* at 10, *citing Blakely,* 542 U.S. at 320, n.1 (O'Connor, J., dissenting)).

Retreating a bit from his earlier position, petitioner argues in his surreply that counsel's error was "not that he failed to make the right prediction regarding the scope of *Apprendi*, but that he failed to even tell his client about the possibility of challenging any exceptional sentence in light of the decision in *Apprendi*." (Dkt. No. 33 at 6). This failure, petitioner contends, deprived petitioner of his right to make an informed decision on whether to plead guilty.

To comport with due process, a guilty plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A

---

[3] Petitioner argues that the appropriate standard of review for the ineffective assistance claim is *de novo*, because, petitioner contends, the state court did not apply federal law when it reviewed petitioner's claim. (Dkt. No. 28 at 15-16). Respondent vigorously contests this argument and responds that the state court applied federal standards, even though the court may not have cited to federal cases. (Dkt. No. 31 at 6-7). The Court need not resolve this dispute, however, because the Court concludes that under either the *de novo* standard or the more deferential standard expressed in 28 U.S.C. § 2254(d), petitioner's claim should be denied.

REPORT & RECOMMENDATION
PAGE 8

plea does not meet this standard "if the defendant is without the information necessary to assess intelligently the advantages and disadvantages of a trial as compared with those attending a plea of guilty." *United States v. Hernandez*, 203 F.3d 614 , 619 (9th Cir. 2000) (internal quotations omitted). However, errors such as failure to perceive or anticipate a change in the law are generally not considered ineffective assistance of counsel.[4] *See, e.g., Alcorn v. Smith*, 781 F.2d 58, 62 (6th Cir. 1986).

Here, the record does not disclose whether counsel's failure to mention *Apprendi* to petitioner was the result of a reasoned decision or was merely an omission. However, even if it were purely an oversight, it is difficult to see any prejudice resulting from petitioner's ignorance of the implications of *Appendi*. Had he been apprised of *Apprendi's* existence, and had he been counseled that *Apprendi* cast doubt on any exceptional sentence that might be imposed by the state court judge in his case, would petitioner have decided to reject the prosecutor's offer of a low-end sentence and risk going to trial? The strength of the underlying case against petitioner makes it unlikely that petitioner would have exercised the option of going to trial, where the best he could hope for might be what he was currently being offered, and the worst would have been a sentence 20 years longer. Therefore, the Court concludes that petitioner fails to show prejudice under *Strickland*, and it is unnecessary to address the "deficient performance" prong. 466 U.S. at 697. Accordingly, petitioner's third ground for relief should be denied.[5]

/

/

## CONCLUSION

---

[4] Petitioner's reliance on *Nichols v. United States*, __F.3d__, 2007 WL 2326051 (6th Cir. 2007), presented in his Statement of Supplemental Authority (Dkt. No. 35), is misplaced. *Nichols* did not address whether counsel's failure to advise a client of *Apprendi's* existence rendered a guilty plea involuntary or unintelligent. Instead, *Nichols* concerned counsel's failure to challenge, at trial and on appeal, the mandatory use of the United States Sentencing Guidelines, in the days after *Apprendi* but before *United States v. Booker*, 543 U.S. 220 (2005), which held that the guidelines were only advisory. Thus, *Nichols* did not involve the key question here – whether knowledge of *Apprendi* would lead a defendant to insist on going to trial despite a strong case against him.

[5] The parties again dispute the appropriate standard to apply to petitioner's *Apprendi* claim here. (*Compare* Dkt. No. 15 at 20 *with* Dkt. No. 28 at 19, n.12). However, again, the Court need not resolve this dispute because the Court concludes that under either the *de novo* standard or the more deferential standard expressed in 28 U.S.C. § 2254(d), petitioner's claim should be denied.

REPORT & RECOMMENDATION
PAGE 9

For the foregoing reasons, petitioner's petition for a writ of habeas corpus should be denied. A proposed Order accompanies this Report and Recommendation.

DATED this 30th day of October, 2007.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge